IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:  5:14cr35/MW/EMT
                                                   5:17cv257/MW/EMT

SAMMIE LEE UNDERWOOD, III

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant Sammie L. Underwood's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" and Memorandum of Law in Support (ECF Nos. 104, 106). The Government filed a response in opposition, and Defendant filed a reply (ECF Nos. 110, 111). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a review of the record and the arguments presented, it is the opinion of the undersigned that Underwood has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied. *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

BACKGROUND and PROCEDURAL HISTORY

On November 18, 2014, a grand jury charged Sammie L. Underwood with possession of a firearm and ammunition by a convicted felon (ECF No. 1).   The one-count indictment listed three prior felony convictions, to wit: (1) delinquent in possession of a firearm (April 20, 2011); (2) principal to aggravated assault with a firearm and principal to discharging a firearm from a vehicle (October 3, 2011); and (3) felon in possession of a firearm or ammunition (July 12, 2012) (*id.*).

The instant federal charge stemmed from an attempted traffic stop on May 10, 2014.   More specifically, law enforcement tried to stop a vehicle that had run a stop sign, but it fled at a high rate of speed, and law enforcement pursued it.   During the pursuit, the driver and lone passenger jumped from the moving vehicle, and the vehicle crashed into a residence.   Neither occupant was apprehended at the time, but Underwood was subsequently arrested after DNA connected him to a hat that officers observed fly off the driver's head as he ran away from the scene.   The hat had been purchased for Underwood by Rashida Davenport, the registered owner of the vehicle.   The passenger was never apprehended.   Law enforcement recovered a stolen loaded firearm and—next to the firearm—multiple clear plastic bags containing crack cocaine, cocaine, marijuana, and bath salts from under the driver's

seat of the vehicle, as well as a pellet gun from the back seat.    Underwood, whose DNA was also found on the stolen firearm, was charged only with possession of the firearm (by a convicted felon) in this case.

Underwood exercised his right to a jury trial, represented by appointed counsel Michelle Daffin, Esq.    A jury was selected on February 9, 2015 (*see* ECF No. 89).    Then-Judge Richard Smoak held a pretrial conference on February 11, 2015, at which it addressed the parties' motions in limine[1] and a newspaper article about the case[2] (*see* ECF No. 90).    Trial was held on March 2, 2015, and a jury convicted the 22-year old defendant as charged (*see* ECF Nos. 53, 56, 91).

---

[1] At the hearing the court ruled: (1) the Government could not introduce evidence that Underwood and Government witness Rashida Davenport had sex on the day of the incident in question; (2) the Government could not introduce testimony that the firearm was stolen; (3) Underwood's nickname of "Trigger Tre" would not be revealed to the jury; and (4) the Government could introduce on rebuttal a video reenactment of law enforcement's discovery of the firearm only if the defense opened the door.    The court also ruled that the defense could not introduce the exculpatory hearsay testimony of Quinn Battles, who had a close relationship with Underwood and with Chris Coleman, who was purported to be the passenger in the vehicle.    During his proffer, Battles testified that Coleman came to Battles' home immediately after the incident and told Battles that Coleman had left something in the car which could get Underwood in trouble.    The defense sought to present the testimony under an exception to the hearsay rule because the declarant, Coleman, had died several months after the incident, and the testimony/evidence supported its position that Underwood was innocent.

[2] The newspaper article figures prominently in Underwood's second claim for relief and is discussed in greater detail below.

Case Nos.: 5:14cr35/MW/EMT; 5:17cv257/MW/EMT

Underwood's final Presentence Investigation Report ("PSR") calculated his base offense level at 20 (ECF No. 70, PSR ¶ 16).   He received a two-level increase because the firearm was stolen, a four-level increase because he used or possessed the firearm in connection with other offenses, and a two-level increase because he recklessly endangered the lives of others in attempting to evade arrest (PSR ¶¶ 17, 18, 21).   Underwood had nineteen criminal history points, and thus a criminal history category of VI.   With a total offense level of 28 and a criminal history category of VI, Underwood's guidelines range would have been 140 to 170 months, but for the application of the statutory maximum sentence of 120 months.   The court sentenced him to 120-months imprisonment (ECF No. 85.)

Underwood filed several objections to the PSR.   First, he objected to the description of the offense conduct, reiterating that Underwood maintained his innocence.   He also objected to the four-level enhancement, claiming there was insufficient evidence to tie him to the drugs in the vehicle.   Finally, he objected to the two-level enhancement for reckless actions in attempting to elude arrest.

At sentencing, the court took note of Underwood's position that he was innocent and overruled the other two objections.   It denied the defense request for leniency and, as noted, sentenced Underwood to the statutory maximum term of 120-

months imprisonment, followed by one year of supervised release (ECF No. 85 at 39–40).

Underwood challenged his conviction on appeal, arguing that the district court abused its discretion by: (1) excluding Battles' testimony about the statements against interest allegedly made Coleman, the purported passenger; (2) excluding a line of questioning on cross-examination of the Government's case agent about potential federal criminal charges that could have been brought against Rashida Davenport; and (3) admitting evidence of drugs found near the firearm because the evidence was not inextricably intertwined with the charged offense, and its probative value was outweighed by the risk of undue prejudice (ECF No. 97 at 2).    The Eleventh Circuit found no error, and alternatively that any error was harmless, and it affirmed Underwood's conviction.

Underwood timely filed the instant motion rising five claims of ineffective assistance of counsel.    The Government opposes the motion in its entirety.

ANALYSIS

A. General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."    *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014).

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"    *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).    The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340,

1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).

Once a matter has been decided adversely to a defendant on direct appeal, it cannot

be re-litigated in a collateral attack under section 2255.    *Nyhuis*, 211 F.3d at 1343

(quotation omitted).    Broad discretion is afforded to a court's determination of

whether a particular claim has been previously raised.    *Sanders v. United States*,

373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual

allegations . . . or supported by different legal arguments . . . or couched in different

language . . . or vary in immaterial respects").

Issues which could have been raised on direct appeal, but were not, are

generally not actionable in a section 2255 motion and will be considered

procedurally barred.    *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523

U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).

An issue is "'available' on direct appeal when its merits can be reviewed without

further factual development."    *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d

at 1055).

Ineffective assistance of counsel claims generally are not cognizable on direct

appeal and are properly raised by a § 2255 motion regardless of whether they could

have been brought on direct appeal.    *Massaro v. United States*, 538 U.S. 500, 503

(2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.   *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).   In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.   *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

The court must consider "whether counsel's assistance was reasonable considering all the circumstances."   *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 689; *see also*

*Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.   *Strickland*, 466 U.S. at 689.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."   *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314.   When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."   *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable."   *Harrington v. Richter*, 562 U.S. 86, 112 (2011)

(quoting *Strickland*).    For the court to focus merely on "outcome determination,"

however, is insufficient; "[t]o set aside a conviction or sentence solely because the

outcome would have been different but for counsel's error may grant the defendant

a windfall to which the law does not entitle him."    *Lockhart v. Fretwell*, 506 U.S.

364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir.

2010).    A defendant therefore must establish "that counsel's errors were so serious

as to deprive the defendant of a fair trial, a trial whose result is reliable."    *Lockhart*,

506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).    Or in the case of alleged

sentencing errors, a defendant must demonstrate that there is a reasonable probability

that, but for counsel's errors, the result of the proceeding would have been less harsh

due to a reduction in the defendant's offense level.    *Glover v. United States*, 531

U.S. 198, 203–04 (2001).    A significant increase in sentence is not required to

establish prejudice, as "any amount of actual jail time has Sixth Amendment

significance."    *Id.* at 203.

To establish ineffective assistance, a defendant must provide factual support

for his contentions regarding counsel's performance.    *Smith v. White*, 815 F.2d

1401, 1406–07 (11th Cir. 1987).    Bare, conclusory allegations of ineffective

assistance are insufficient to satisfy the *Strickland* test.    *See Boyd v. Comm'r, Ala.*

*Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*,

456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542

(11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992).

Furthermore, counsel is not constitutionally deficient for failing to preserve or argue

a meritless claim.   *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015)

(citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir.

2008)).   This is true regardless of whether the issue is a trial or sentencing issue.

*See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir.

2012) (failure to preserve meritless *Batson* claim not ineffective assistance of

counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009)

(counsel not ineffective for failing to make a meritless objection to an obstruction

enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel

was not ineffective for failing to raise issues clearly lacking in merit); *Meeks v.

Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to

make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359

(11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably

believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974

(11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313.    This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.    *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).    "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).    The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."    *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish

a violation of his constitutional rights based on his attorney's performance.    A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).    Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.    *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).    To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.    *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).    Even

affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.    *Lynn*, 365 F.3d at 1239.

    B.  Underwood's Ineffective Assistance of Trial Counsel Claims

        1.  Claim One—Use of "Delinquent Act" Conviction

Underwood claims that his attorney was constitutionally ineffective because she did not object (on a variety of grounds) to the use of his April 20, 2011, conviction for "delinquent in possession of a firearm" during the proceedings (as noted above, the was one of the three prior felony convictions listed in the indictment).[3]    Underwood asserts counsel was ineffective for failing to "effectively challenge the indictment, evidentiary error, verdict of guilty, sentencing enhancement and reasonableness of the sentence based primarily on unreliable, inaccurate and prejudicial use of delinquent acts" (ECF No. 104 at 17).    None of Underwood's arguments with respect to this conviction have merit, and even if they did, he cannot show prejudice.

---

[3] The PSR refers to this conviction as "attempted possession of a firearm by a convicted felon" (ECF No. 70, PSR ¶ 33).    The original affidavit and complaint from the Parker Police Department noted the offense as "convicted felon in possession of a firearm," but the state court judgment reflects that the actual conviction was for "delinquent in possession of weapon/firearm" (ECF No. 12 at 9–13; ECF No. 19 at 11–15).

Underwood admits that counsel objected to the Government's notice of intent to offer this conviction as Rule 404(b) evidence (ECF No. 22).    However, he contends counsel was ineffective because she did not make a contemporaneous objection pursuant to Fed. R. Crim. P. 51(a), and she did not move to strike or redact this "nolo" conviction from the indictment pursuant to Fed. R. Crim. P. 7(d).

Rule 51(a) provides, with respect to preserving claimed error for appeal, that "Exceptions to rulings or orders of the court are unnecessary."    Fed. R. Crim. P. 51(a).    Counsel is not required to take contemporaneous action pursuant to this Rule, and thus there is no deficient performance in failing to do so.

Similarly, Underwood's contention that counsel should have moved pursuant to Fed. R. Crim. P. 7(d) to strike or redact the delinquent act or violation of law from the indictment misses the mark.    This provision relates to *surplusage* in the indictment.    It provides, "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information."    The fact that the indictment listed more than one prior qualifying conviction does not render the inclusion of this conviction "surplusage." Furthermore, Underwood stipulated to his status as a convicted felon and the jury was given a redacted indictment for use during

deliberations (*see* ECF No. 54 at 2; ECF No. 91 at 25).    Counsel's performance was not deficient; nor has any prejudice been shown.

In Underwood's memorandum, he appears to rely on Fla. Stat. § 985.35(6) to argue that this conviction was not a "conviction" but an adjudication of delinquency that may not be construed as a conviction for purposes of this case (ECF No. 106 at 1–2).    Section 985.35 governs "[a]djudicatory hearings; withheld adjudications; orders of adjudication."    Subsection (6), upon which Underwood relies, provides in relevant part: "an adjudication of delinquency by a court with respect to any child who has committed a delinquent act or violation of law shall not be deemed a conviction; nor shall the child be deemed to have been found guilty or to be a criminal by reason of that adjudication."    However, the judgment provided by the Government reveals that although Underwood entered a nolo plea, he was prosecuted as an adult (i.e., in Circuit Court, not juvenile court), his conviction was a second degree felony, and he was adjudicated guilty (ECF No. 19 at 11).    Thus, counsel had no good-faith basis on which to make the argument Underwood presses here, and in any event Underwood had two other prior convictions that established him as a convicted felon for purposes of 18 U.S.C. § 922(g) (*see* ECF Nos. 1, 70).

Underwood also asserts counsel performed deficiently because she:

did not challenge the certified copy of the conviction which was the arresting officer's arrest affidavit unexceptional to the hearsay rule and not only did it violate the Confrontation Clause where it was not supported by live testimony from the Affiant, but it also alerted the jury that Movant was a "convicted felon in possession of a firearm" which caused undue prejudice.

(ECF No. 104 at 16.)   To the extent the undersigned can discern Underwood's claim, he appears to suggest that it was improper for the court to rely on the arresting officer's affidavit.   The facts set forth in the affidavit, while perhaps relevant to a determination of the *nature* of a prior felony (for instance whether a prior felony is a crime of violence), are of minimal, if any, consequence to the *fact* of a prior felony conviction.   In any event, Underwood's claim that the judgment "cannot be used to verify when one has plead nolo contendere" is utterly unsupported and without merit.

As noted above, the Government sought to introduce the 2011 conviction as 404(b) evidence.   The Government also sought to introduce Underwood's other felon in possession conviction (PSR ¶ 36), as 404(b) evidence.   Counsel, however, successfully challenged the admission of *both* convictions (ECF Nos. 19, 22, 25). Underwood stipulated that he was a convicted felon, without disclosing the nature of the prior felony, so such evidence was unnecessary (*see* ECF No. 54 at 2). Additionally, although the conviction at issue here was identified in the indictment,

before trial the Government prepared a redacted indictment to go back to the jury that removed the all of the actual convictions (*see* ECF No. 91 at 25).   Contrary to Underwood's suggestion, the jury was not alerted that he had already been convicted of similar crimes, and none of the documentation supporting the conviction was introduced into evidence at trial.   There was no basis for an objection.

Underwood also claims his attorney was ineffective because she did not challenge the court's consideration of the 2011 conviction at sentencing.   Again, there was no basis for such an objection.   Underwood was assessed three criminal history points for the 2011 conviction pursuant to U.S.S.G. § 4A1.1(a) (ECF No. 70, PSR ¶ 33).   Points are properly assessed for "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense."   U.S.S.G. § 4A1.2(a)(1).   What is more, even if the points for this conviction had been improperly assessed, Underwood still would have had a total of 16 criminal history points, and his criminal history category of VI would not have changed.

Judge Smoak considered the whole of Underwood's criminal history in determining what he believed to be the appropriate sentence.   Underwood has not shown that there existed a viable objection counsel could have made to the court's

consideration of this conviction, or that such an objection, if made, would have made a difference in the outcome of the proceedings.

## 2. Claim Two—Pretrial Publicity

Underwood contends that counsel was constitutionally ineffective because she did not move to strike jurors or file a motion for a change of venue due to adverse pretrial publicity.    The day after jury selection, a local newspaper published an article, complete with a picture of Underwood, identifying him by both his name and his alleged nickname, "Trigger Tre," mentioning the federal charges and upcoming trial, and reporting he was a suspect in an unrelated investigation into the shooting death of a 17-year old.

Counsel brought the article to the court's attention at the pre-trial conference and motion hearing on February 11, 2015, the day after jury selection (ECF No. 90 at 2–13). The court acknowledged having read the article in question, which had been published that day, but noted it had forgotten about it until counsel brought it up.    The article was introduced into evidence, and the parties agreed that the court would ask a general question to the jurors when they arrived for the trial the following month and proceed from there.    The court asked the parties to provide their "best effort on exactly what we should ask the jurors" (ECF No. 90 at 9).

On March 2, 2015, counsel provided the court two questions to ask the members of the jury (ECF No. 91 at 2 (while not clear, it appears that counsel for both sides agreed upon the two questions to be asked)).   Before trial began, the court called the jurors in individually and asked each one in turn whether, since having been selected as a juror in this case, he or she had read any articles or seen any news reports about Defendant Underwood, or whether anyone else had talked to him or her about such articles or news reports.

Four jurors answered the court's inquiry in the affirmative.   The first juror acknowledged he had seen the article and recalled the exact date it had appeared (ECF No. 91 at 5).   The juror assured the court that he could decide the case solely based on the evidence presented during the trial and the instructions provided by the court.   Defense counsel inquired further, and the juror said he did not recall having learned any details about Underwood through the article (ECF No. 91 at 5–6).   The second and third jurors admitted having seen the article but said they intentionally did not read it, and the fourth juror stated her husband had mentioned it to her, but without detail (*id.* at 7–10, 12–13).

Defense counsel objected to the court allowing the first juror who had read the article to serve as a juror in the event he started to recall more of what he had

read as the trial progressed.    She specifically stated she was not requesting that the court excuse the other three jurors who were "at least mildly familiar with the article" (*id*. at 19–22).    The court excused the first juror as requested and explained it may have been remiss if it had not instructed the jurors not to listen to news reports (*id.* at 22–24).

Underwood now complains that counsel should have taken additional action with respect to the second and third jurors who "came into contact with" the article (ECF No. 104 at 19).[4]  He asserts counsel should have requested "a comprehensive questionnaire" to "search out written and oral examinations for concealment of juror bias," moved to excuse the two jurors under the "presumption of prejudice" standard, or moved for a change of venue due to the publicity in the small community (*id*.). Underwood claims that counsel's failing resulted in a denial of his right to trial by an impartial jury.    The record does not support his assertion.

The Government concedes that the article in question (ECF No. 110 at 15)[5] contained prejudicial information about Underwood.    However, defense counsel's

---

[4] Underwood's motion focuses on the two women who had "contact with" the article and not the fourth woman whose husband read the article and mentioned it to her.    Nevertheless, the undersigned will discuss the fourth juror, to the extent Underwood takes issue with counsel's failure to move to strike *any* of the three remaining jurors who had some familiarity with the article.

[5] The Government has provided this court with a copy of the article from newspaper archives (ECF

questioning of the jurors made clear that none of the other three jurors had read the article.    In fact, two emphasized that they saw the article but did not read it (ECF No. 91 at 6–10).    There is nothing about their answers that would suggest they were untruthful.    And the fourth juror, whose husband had seen the article, repeatedly stated she told him not to talk to her about it (*id*. at 11–13).    The jurors' statements undercut Underwood's contention that his attorney was constitutionally ineffective. He does not identify what additional questions counsel could or should have asked these jurors that would have revealed prejudice resulting from the article they all stated they did not read.    Underwood's suggestion that as a result of the content of the article the jurors lied to "conceal misconduct or formulation of a biased opinion" (ECF No. 104 at 19–20) is unsupported and wholly speculative.    There is no evidence of bias and no indication that any of the sitting jurors learned of extrinsic evidence about Underwood or his case that would undermine confidence in the verdict.    *See United States v. Bolinger,* 837 F.2d 436, 441 (11th Cir. 1988) (affirming conviction after defendant failed to show bias or that any juror had learned extrinsic evidence relevant to his case); *United States v. Costner*, 646 F.2d 234, 236–

---

No. 110 at 14–15 & n.6) because the original defense exhibit of the article was returned (*see* ECF No. 90 at 2–9).

37 (5th Cir. 1981) (affirming conviction where a few jurors were "dimly aware" of the existence of a news article about a prior offense but none had read the article because "the trial judge was meticulous in examining the jurors for the existence of prejudice" and defendant "failed to demonstrate any identifiable prejudice on the part of the jurors.")

In his reply, Underwood suggests that the jurors should have been asked whether they recalled being court-ordered to avoid contact with any newspaper articles and advised that doing so constituted "misconduct" (ECF No. 111 at 4). However, the second and third jurors to whom he refers actually did the proper thing—upon realizing the newspaper article was related to the proceedings, neither read it—even though the trial court evidently neglected to instruct the jurors in this regard (*see* ECF No. 89 at 48 (court excuses the jurors without further instruction)). As such, there is no record support for Underwood's assertion that any juror violated an instruction to avoid newspaper articles or publicity about the case.

Underwood also claims Attorney Daffin was constitutionally ineffective because she did not file a motion for change of venue.    Federal Rule of Criminal Procedure 21(a) governs the transfer of a trial for prejudice.    It provides that, "[u]pon the defendant's motion, the court must transfer the proceeding . . . to another

district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."    Fed. R. Crim. P. 21(a).    A defendant can establish the need for a change of venue in two ways.    He can either demonstrate that a fair trial was impossible because the jury was actually prejudiced against him, or he can show that juror prejudice should have been presumed from prejudice in the community and pretrial publicity.    *United States v. Campa*, 459 F.3d 1121, 1143 (11th Cir. 2006).    The *Campa* court stated that in order for the presumption of prejudice to apply, the defendant must show both: "(1) that widespread, pervasive prejudice against him and prejudicial pretrial publicity saturates the community where he is to be tried, and (2) that there is a reasonable certainty that such prejudice will prevent him from obtaining a fair trial by an impartial jury."    *Id.*    A defendant bears a heavy burden, as the presumed prejudice principle is rarely applicable and is reserved for an extreme situation.    *Id.* (quotations omitted).    The Supreme Court has ruled that prejudice cannot be presumed in the absence of a "trial atmosphere . . . utterly corrupted by press coverage."    *Id*. at 1144 (quoting *Dobbert v. Florida,* 432 U.S. 282 (1977)).    This certainly was not present in Underwood's case.    Rather, there was a single article in a local newspaper, only four of the fourteen jurors had any

knowledge of the article, and only one of those four had read it.   This does not rise to the level of the sort of pervasive pretrial publicity that would have supported a motion for change of venue.   Counsel was not constitutionally ineffective for failing to make such a motion, *see Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue), and Underwood is not entitled to relief on this claim.

       3.  <u>Claim Three—Errors in Stipulating to or Failing to Object to Testimony</u>

       Underwood asserts that his Fifth and Sixth Amendment rights were violated when counsel stipulated to or did not contemporaneously object to what he characterizes as inaccurate, unreliable, and highly prejudicial opinion testimony, including testimony relating to a drug trafficking theory at trial and sentencing.

       First, he challenges counsel's agreement to a stipulation to exclude testimony from Rashida Davenport that on the date of the events in question she and Underwood had been together smoking marijuana and having sexual intercourse (ECF No. 90 at 14–15). Underwood maintains that this stipulation "removed a favorable hypothesis" that if he had been dropped off at Davenport's hotel room, and spent time with her there before entering her vehicle, at some point she must

have seen the gun and drugs.   If she had not seen them, they must either have already been in her vehicle or they belonged to the passenger.

Counsel moved in limine to exclude evidence that on May 10, 2014, before the events giving rise to this case, Underwood brought Davenport a personal-use amount of marijuana and the two had sexual intercourse, arguing that neither fact was relevant to his alleged possession of a firearm (ECF No. 21).   At the pre-trial hearing the Government agreed, stating "we will not engage in any questioning, or we can admonish our witness not to testify that she and the defendant engaged in sexual intercourse on the day of the incident" but also stated, with defense agreement, the fact that a relationship existed between Underwood and Davenport was relevant (ECF No. 90 at 15).   The question of the drug use was not addressed at the hearing.

Davenport testified at trial that, "leading up to May 10th of 2014," she and Underwood had an intimate relationship (ECF No. 91 at 135).   She testified that on May 10, 2014, she was staying in a hotel, and she called Underwood and asked him if he would "bring [her] something to smoke" (i.e., marijuana) (*id*. at 136).   She stated Underwood then brought marijuana to the hotel for her, before borrowing her vehicle on the date in question (ECF No. 91 at 135–38).   She noted she had never

seen Underwood with a gun, although she admitted it was possible he could have had something in his pocket that she did not feel.   The Government did not ask whether the two had sexual intercourse on the date of the offense.

On cross-examination, Davenport reiterated that she had never seen Underwood with a gun, despite having known him for a number of years and hanging out quite a bit.   She saw neither a gun nor a pellet gun on the date in question, and she did not see any drugs other than the marijuana he brought in response to her request for "something to smoke."   In response to a question by defense counsel, Davenport denied that she and Underwood had been intimate on that date. Davenport claimed that her previous inconsistent statement to law enforcement was a result of her confusion about the date (ECF No. 91 at 152–55).

During her closing argument, Daffin argued that Davenport was not a credible witness, noting she had lied to law enforcement multiple times (ECF No. 91 at 238–39).   Daffin nonetheless made the very argument Underwood now claims the stipulation prevented her from making:   that if Davenport did not see the pellet gun, gun, and drugs when Underwood was in her hotel room, they were not his and must have been brought by the passenger in the car (*id.* at 243–44).   Therefore, the

stipulation, whatever effect if may have had, did not prevent counsel from making the argument Underwood wanted her to make.

Next Underwood claims the stipulation opened the door for the Government to present Corporal Tammy Lanier's testimony about the drugs she allegedly found when searching the vehicle.    He asserts counsel should have objected to or moved to exclude Lanier's testimony that, based on her training and experience, the drugs were packaged in a manner consistent with an intent to distribute, and there was a nexus between the drugs and the firearm.

Daffin strenuously objected to the Government's notice of intent to admit any evidence of the drugs located in the vehicle claiming it was neither relevant nor inextricably intertwined with the charged offense (ECF No. 22 at 4–6; ECF No. 91 at 28–33).    The court overruled the objection, and the Eleventh Circuit upheld the district court's ruling (ECF No. 97 at 8–10).    The fact that counsel's objection was unsuccessful is not a reflection of her performance.

Additionally, Underwood's recollection of the substance of Corporal Lanier's testimony is mistaken.    Lanier testified about her experience and about the field tests law enforcement performed on the drugs, but she did not testify that the drugs

were packaged for distribution.[6] In any event, Lanier's testimony concerning her interpretation of the packaging of the drugs and nexus between the drugs and the firearm, likely would not have been improper but instead a subject for cross-examination and argument.

Finally, Underwood argues that Lanier's "inaccurate, unreliable and highly prejudicial testimony" unreasonably subjected him to a four-level guidelines enhancement for possession of the firearm in connection with another felony. Contrary to Underwood's suggestion, counsel did file an objection to the application of the increase.   Through the amendment process, the final PSR reflects that the "other felony" was Burglary While Armed with a Firearm, Possession of Bath Salts, and Possession of Cocaine, as charged in Bay County Docket 2014CF2257 (ECF No. 70, PSR ¶ 18).   At sentencing the court sustained counsel's objection to the application of the adjustment on the basis of the burglary, but found, over counsel's objection, that the controlled substances in the vehicle supported the enhancement even without actual laboratory testing (*see* ECF No. 85 at 13–24).   Again, the fact

---

[6] During its opening statement the Government told the jury "you will hear that next to that firearm she found a number of different types of drugs packaged for distribution, all underneath the driver's seat" (ECF No. 91 at 45).

Case Nos.: 5:14cr35/MW/EMT; 5:17cv257/MW/EMT

that counsel's position did not prevail does not render her performance constitutionally deficient   No relief is warranted as to any portion of this claim.

### 4.  Claim Four—Enhancement for Stolen Firearm

Underwood contends his attorney was constitutionally ineffective because she did not object to the Government's decision to charge him with a violation of § 922(g) and seek a two-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(4)(A) (if a firearm was stolen), rather than charging him with a violation of § 922(j), which prohibits the possession of a stolen firearm.   Again, Underwood's claim is without merit.

Sections 922(g) and 922(j) require different elements of proof.   Section 922(g) does not require proof that a defendant knew a firearm was stolen, while § 922(j) does not require proof that a defendant was previously convicted of a felony. Each provision has the same statutory maximum penalty of ten years (*see* § 924(a)(2)).   The Government is not required to charge a defendant under a particular statute.

Underwood's related contention that he was entitled to a jury determination of the applicability of the § 2K2.1(b)(4)(A) adjustment is mistaken.   Application of

this enhancement did not increase his sentence above the statutory maximum penalty.

In *Apprendi v. New Jersey*, the Supreme Court held that a fact, other than a prior conviction, that increases the maximum penalty for a crime is an element of the crime that must be submitted to a jury. *Apprendi*, 530 U.S. 466, 490–91 (2000). In *Alleyne v. United States*, the Supreme Court extended *Apprendi*'s holding to facts, other than a prior conviction, that increase the mandatory minimum prescribed by a statute, while recognizing that such facts are distinct from fact-findings that guide judicial discretion in selecting a punishment within limits fixed by law. *Alleyne*, 570 U.S. 99, 113 & n.2 (2013). In *Alleyne,* the Supreme Court cautioned that its holding did not disturb judicial fact-findings at sentencing for facts that do not impact the *statutory* punishment. *See id*. at 116. Therefore, after *Alleyne*, "a district court may continue to make guidelines calculations based upon judicial fact-findings and may enhance a sentence—so long as its findings do not increase the statutory maximum or minimum authorized by facts determined in a guilty plea or jury verdict." *United States v. Charles*, 757 F.3d 1222, 1225–26 (11th Cir. 2014). In this case, the two-level increase affected only Underwood's guidelines calculation and not his statutory mandatory minimum or maximum. Therefore, his suggestion

that he was entitled to a jury determination of this fact (i.e., whether the firearm was stolen) is mistaken, and counsel was not constitutionally ineffective for not making a meritless objection.

5. <u>Claim Five—Advice Concerning Plea Agreement</u>

Underwood's final claim concerns alleged misadvice about a plea offer from the Government.    He asserts that, before trial, counsel conveyed a plea offer to him that "did not include any suggestion of enhancements" (ECF No. 104 at 27).    Daffin allegedly informed her client that if he accepted the offer he would receive up to a three-level reduction for acceptance of responsibility.    However, he claims she also told him that to avoid possible enhancements he would have to maintain his innocence and go to trial.    Underwood asserts if he had been properly advised he would have accepted a plea, and that if he had done so his sentence would have been far less than the 120-month sentence imposed.

Underwood's assertion appears to be based at least in part on a misunderstanding of what transpired.    First, it is simply not credible that his experienced defense attorney provided such patently erroneous advice, that a defendant must go to trial in order to be able to object to or otherwise avoid sentencing enhancements.    Second, his suggestion that the Government offered a

plea agreement such as that he described is implausible.   The United States

Attorney's Office in this district does not plea bargain or enter into plea agreements

that limit its ability to seek sentencing enhancements or to present arguments

regarding the guidelines calculations. [7]    Finally, the Government's response

specifically asserts that there was "no such 'plea offer' made by the trial AUSA and

especially no representation that the Government would not pursue sentencing

enhancements" (ECF No. 110 at 30).

Regardless, Underwood cannot show prejudice, and thus this ineffective of

assistance claim necessarily fails.   The Sixth Amendment right to the effective

assistance of counsel extends specifically "to the negotiation and consideration of

plea offers that lapse or are rejected."   *In re Perez*, 682 F.3d 930, 932 (11th Cir.

2012) (*citing Missouri v. Frye*, 566 U.S. 134, 138–45 (2012); *Lafler v. Cooper*, 566

U.S. 156, 163 (2012)).   A defendant who claims that ineffective advice led him to

reject a plea offer must show that but for ineffective assistance of counsel, he would

have accepted the plea, and that the conviction or sentence or both under the terms

of the plea offer would have been less severe than under the judgment and sentence

---

[7] The Government notes that the standard plea agreement in this district reserves the Government's right "to correct any misstatements by the Defendant or Defendant's attorney and to present evidence and make arguments pertaining to the application of the sentencing guidelines" (ECF No. 110 at 30).

Case Nos.: 5:14cr35/MW/EMT; 5:17cv257/MW/EMT

that were imposed.   *Lafler*, 566 U.S. at 164.   A defendant's insistence that he is innocent is a "relevant consideration" that "makes it more difficult to accept his claim" that he would have agreed to a plea deal.   *See Osley v. United States*, 751 F.3d 1214, 1224–25 (11th Cir. 2014).   Similarly, a defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice.   *Pericles v. United States*, 567 F. App'x 776, 782 (11th Cir. 2014) (quoting *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)); *Rosin v. United States*, 786 F.3d 873 (11th Cir. 2015).

Underwood's claim that he would have pleaded guilty contradicts his repeated assertions of innocence at trial, and through sentencing (ECF No. 60 at 1; ECF No. 85 at 11–12, 19, 33).   Moreover, he cannot show that his sentence would have been less severe if he had pleaded guilty.   With a three-level reduction for acceptance of responsibility, Underwood would have had a total offense level of 25 and an advisory guidelines range of 110 to 120 months' imprisonment after adjusting down (from 110 to 137-months) for the statutory maximum.   The court's comments at sentencing made clear its belief that the sentence imposed was appropriate.   It noted that there were "so many aggravators" in this case, including the nature and number of Underwood's prior convictions and the car chase that was part of this case, and

the court expressed its belief that "any sentence below the 120 months would simply not be adequate" (ECF No. 85 at 39–40). Nothing in the record suggests that Underwood's decision to proceed to trial, as opposed to pleading guilty, played any part in the court's assessment of an appropriate sentence. Thus, even if counsel had provided deficient advice, and even if the court were to accept Underwood's assertion that he would have pleaded guilty, he cannot show prejudice.

Conclusion

In sum, an evidentiary hearing is not necessary for this court to resolve Underwood's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015). And, for all of the foregoing reasons, Underwood has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Therefore, Underwood's motion should be denied in its entirety.

Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must

state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.   The motion to vacate, set aside, or correct sentence (ECF No. 104) be **DENIED**.

2.   A certificate of appealability be **DENIED**.

Case Nos.: 5:14cr35/MW/EMT; 5:17cv257/MW/EMT

At Pensacola, Florida, this <u>10th</u> day of April 2020.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.